FILED
2010 Aug-12 PM 03:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY W. NORTHCUTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 09-BE-1698-E |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION

I. INTRODUCTION

On March 8, 2006, the claimant, Timothy W. Northcutt, applied for supplemental security income under Title XVI of the Social Security Act. (R. 97). The claimant alleges disability commencing on March 6, 2006, because of mild mental retardation (MMR), adjustment disorder, and lumbar spine disorder. (R. 32-33). The Commissioner denied the claim both initially and on reconsideration. (R. 75). The claimant filed a timely request for a hearing before an Administrative Law Judge, and the ALJ held a hearing on January 31, 2008. (R. 26). In his decision dated July 17, 2008, the ALJ found that the claimant was not disabled, and thus, she was ineligible for social security income. (R. 25). On July 27, 2009, the Appeals Council denied the claimant's request for review, and the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1). The claimant has exhausted his administrative remedies, and this court has jurisdiction pursuant to 42 U.S. C. §§ 405(g) and

1383(c)(3). For the reasons stated below, the decision of the Commissioner will be reversed and remanded.

## II. ISSUES PRESENTED

I.      Whether the ALJ applied improper legal standards when determining if the claimant suffered from a severe impairment.

II.     Whether the ALJ applied improper legal standards when determining if the claimant's mild mental retardation warranted presumptive disability under the Listing of Impairments.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No...presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. However, this court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but must view the record in its entirety and take account of the evidence that detracts from the

evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432 (d)(1)(A) (2004). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed;
> (2) Is the person's impairment severe;
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app.1;
> (4) Is the person unable to perform his or her former occupation;
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to finding a disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

At step two of the sequential evaluation, "the claimant bears the burden of proving that he has a severe impairment or combination of impairments." *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). An impairment is not severe only if the abnormality is so slight and its effects so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. *Edwards v. Heckler*, 736 F. 2d 625, 630 (11th Cir. 1984). The severity step is viewed as a "threshold inquiry" only, and the claimant's burden of proof is mild. *McDaniel*, 800 F.2d at 1031.

If the disability involves substance abuse, "the claimant bears the burden of proving that the substance abuse is not a contributing factor material to the disability determination pursuant to 42 U.S.C. § 423(d)(2)(C) or §1382c(a)(3)(J)." *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001). If the evidence shows that despite the substance abuse, the claimant's remaining limitations are disabling, then the substance abuse is not material. However, if the remaining limitations are not disabling, then the substance abuse is material and thus, the substance abuse is a contributing factor. 20 C.F.R. §§ 416.935(b)(2)(i) and (ii).

To be considered for disability benefits regarding mental impairment, "a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. § 404.12.05 (2009). Furthermore, "under § 12.05 (C), a claimant must establish: a valid verbal, performance, or full scale IQ score of 60-70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993); 20 C.F.R. § 404.12.05(C). When a claimant presents evidence indicating a deficit in adaptive functioning after age 22, the ALJ must presume mental impairment before age 22 because mental retardation generally does not improve as a person ages. *Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001).

## V. FACTS

The claimant has an eighth grade education and was forty-four years old at the time of the administrative hearing. (R.47). His past work experience includes employment as a sheet rock hanger. The claimant originally alleged that he was unable to work because of MMR, adjustment

disorder, and lumbar spine disorder. (R. 32-33). However, on appeal, the claimant did not contest the ALJ's finding that the lumbar spine pain did not meet the criteria for a "severe" impairment.

*Physical Limitations*

On April 10, 2006, Dr. Aldaher, M.D., performed a consultative exam at the request of Disability Determination Services. Per the claimant, Dr. Aldaher reported positive smoking and no alcohol abuse. Dr. Aldaher's findings further noted normal range of motion in the lumbosacral area of the claimant's back with no spasms or deformity. Dr. Aldaher opined that the claimant retains the ability to perform work-related functions such as sitting, standing, walking, lifting, carrying and handling objects. (R. 269-270). On a self-reported health questionnaire conducted in conjunction with Dr. Aldaher's examination, the claimant reported pain in his back and joints, but he took Advil and Tylenol for relief. (R. 274).

*Mental Limitations*

From 1977 to 1979, the claimant attended B. B. Comer Memorial School in Sylacauga, AL. Eighth and ninth grade report cards deemed the claimant "EMR," which the claimant's attorney believed to denote "educatably mentally retarded." (R. 276, 30). The report cards further noted that he was in "special class." The claimant withdrew after the first semester of his ninth grade year. (R. 276).

On May 5, 2006, Dr. Arnold, Psy. D., performed a consultative psychological examination at the request of DDS. During the examination, the claimant stated that he suffered injuries from a car accident, and as of 5 years prior, was unable to reach or climb to perform sheet rock work. The claimant also reported no referral for mental health services but noted special education classes in school. He also denied any drug use in the past five years but stated

5

that he started drinking alcohol at age fourteen and started using cocaine and crystal meth at age sixteen. On the WAIS-III, the claimant scored a verbal IQ of 72, a performance IQ of 74, and a full scale IQ of 70. (R. 267). Dr. Arnold concluded that the WAIS-III scores indicated borderline intellectual functioning (BIF) range. The claimant's Axis I diagnoses included adjustment disorder–not otherwise specified, alcohol abuse–partial remission, and substance abuse remission–self report. Axis II diagnoses included MMR and history of special education services. (R. 268).

On May 23, 2006, Dr. Gordon Rankart, a non-examining Psy. D., performed a consultative Mental Residual Functional Capacity Assessment of Dr. Arnold's findings. Dr. Rankart found the claimant moderately limited in his ability to understand and remember short and simple directions; moderately limited in his ability to carry out detailed instructions; and moderately limited in his ability to maintain attention and concentration for extended periods. (R. 245). He also found the claimant moderately limited in his ability to respond appropriately to changes in the work setting and in his ability to set realistic goals or make plans independently of others. (R. 246). From his findings, Dr. Rankart concluded that the claimant was able to comprehend brief and uncomplicated directions and able to carry out short and simple directions. He found the claimant's attention and concentration adequate for two-hour periods and mild limitations on social interaction. Finally, Dr. Rankart found adequate adaptation if changes are introduced gradually and work goals are simple. (R. 247).

Next, Dr. Rankart performed a Psychiatric Review Technique based on Dr. Arnold's findings. Dr. Rankart based his medical disposition on the categories of: organic mental disorders, affective disorders, and substance addiction disorder. He noted the medically

determinable impairments of mild mental retardation/borderline intellectual functioning, adjustment disorder, and alcohol abuse–partial remission. (R. 250, 252, 257). He also found mild functional limitations for restriction of activities of daily living; moderate difficulties maintaining social functioning; moderate difficulties maintaining concentration persistence or pace; and no episode of decompensation for an extended duration. (R. 259). Dr. Rankart opined that the diagnosis of MMR possessed little longitudinal support because no IQ scores existed other than the test performed by Dr. Arnold, and only one report card showed EMR and special classes. He further concluded that the IQ scores suggested BIF, but even if MMR was present, no other impairment existed to pose additional workplace limitations. (R. 261).

On May 10, 2007, the claimant sought treatment at Cheaha Mental Health Center from therapist Ken Grayson, M.S. The claimant presented with delusional thought context and evidence of auditory and visual hallucinations. During the session, the claimant stated that he abused cocaine and crystal meth for over ten years. He also said that his education was limited to sixth or seventh grade. At the close of the session, Mr. Grayson scheduled an appointment for the claimant to see the center's psychologist. (R. 242).

On May 15, 2007, Dr. Kent Frost, MD at Brookwood Medical Center Emergency Room, examined the claimant. The claimant presented with depressed mood and insomnia. The claimant stated that his drug addiction lasted until January 2007. He then enrolled in a drug detoxification program and stated that he hds been clean since completing the program. Dr. Frost admitted the patient to the psychiatric ward. (R. 218). On the same day, Mr. Grayson assessed the claimant. The claimant complained of auditory and visual hallucinations, and he stated that he felt as if he would be assassinated. The claimant's mother also reported that he talked back to the television.

The claimant requested hospitalization. (R. 241).

On May 16, 2007, Dr. Armand Schachter, MD at Brookwood Medical Center, examined the claimant. The claimant complained of hallucinations and insomnia, and Dr. Schachter prescribed Risperdal (atypical antipsychotic drug) to the claimant. (R. 160, 171). During intake, Dr. Schachter found Axis I diagnoses of mood disorder, cocaine use, rule out bipolar, and cocaine dependence. He noted no Axis II diagnoses. (R. 158). On May 21, 2007, Dr. Schachter examined the claimant for discharge. He noted that the claimant responded well to inpatient treatment and could be discharged. The claimant's Axis I diagnosis at discharge included cocaine abuse, and Dr. Schachter found no Axis II diagnoses. Dr. Schachter instructed the claimant to follow up with the local mental health center. (R. 171).

On May 23, 2007, Mr. Grayson again conducted a therapy session with the claimant. On the self-reported intake assessment, the claimant noted that he used cocaine daily from 20 years prior. He also noted that he previously worked in construction but was no longer able because of disability. The claimant further noted that he took special education classes and that the ninth grade was the highest grade he completed. (R. 237-38). Mr. Grayson noted the claimant's estimated intellectual range as below average. He further found Axis I diagnoses of psychotic disorder and cocaine abuse, but he deferred Axis II diagnoses. (R. 239). On June 6, 2007, Mr. Grayson conducted another scheduled session with the claimant. The claimant complained of nervousness but attributed it to medication side effects. Mr. Grayson noted improvement of the claimant's psychosis. (R. 231). Mr. Grayson again conducted a session with the claimant on June 25, 2007. The claimant expressed a need for food stamps and disability, but Mr. Grayson noted that the concerns seemed to be prompted by the claimant's mother. Mr. Grayson also noted

minimal progress toward the claimant's set goals. (R. 230).

*The ALJ's Hearing*

Upon denial of the claimant's request for supplemental security income, the claimant requested and received a hearing before an ALJ. (R. 28). At the hearing, the claimant testified that he suffered from sharp pains in his neck and back. The claimant further alleged the disabilities of MMR, adjustment disorder, and disorders of the lumbar spine. (R. 30-31).

First, the ALJ questioned the claimant, and the claimant admitted his hospitalization at Brookwood Medical Center from May 16, 2007, to May 21, 2007. (R. 45). The claimant further testified that he was never married, had no children, and lived in a mobile home with his mother. (R. 46). He also stated that he withdrew from school during the eighth grade and never obtained his GED. The claimant said that he had no income and relied on his mother for financial support. He testified that he last worked in 2004 hanging sheet rock for his uncle, but he had to stop because of back pain that he described as "flaming fires." (R. 47-48). The claimant stated that he took two or three Advil and Tylenol per day for the pain. (R. 49).

Next, the claimant's attorney questioned the claimant, and the claimant stated that he could read, write his name, and do some simple math. He also stated that he used drugs at the time he was admitted to Brookwood Medical Center in May 2007 but denied drug use since his discharge. Regarding his mobility, the claimant testified that he could stand for around 15 minutes and sit for about 45 minutes before his pain increased. (R. 52). Lastly, the claimant stated that he slightly assisted his mother with chores, but he did not enjoy socialization. (R. 53).

Then, Dr. Mary Kessler, VE, opined as to the claimant's ability to perform work available in the economy. She determined that the claimant's past relevant work as a sheet rock hanger

involved very heavy, unskilled labor. The ALJ then asked Dr. Kessler to consider available work in light of the following conditions: "a person of Mr. Northcutt's age, education, and work history; able to perform sedentary work; able to understand, remember, and carry out simple instructions; and responds appropriately to supervisors, co-workers, the public, and normal work pressures." (R. 45). Applying these restrictions, Dr. Kessler opined that the claimant could work as a cashier, an inspector, a sorter, or a tester. (R.55).

Finally, the ALJ asked Dr. Kessler to consider the four jobs in light of the physical capabilities outlined by Mr. Grayson in exhibit B13F[1]. Dr. Kessler opined that the claimant most likely could not work as a cashier because of his inability to work in coordination or proximity to others without being distracted. She testified that given his marked degree of impairment in responding to work changes, the changes would have to be introduced slowly and explained well in the testing, inspecting, and sorting jobs. (R. 55). The ALJ asked Dr. Kessler to consider a person with severe psychiatric impairments and moderate back pain, and Dr. Kessler opined that the claimant could not perform any of the jobs listed with those restrictions. (R. 56).

*The ALJ's Decision*

On July 17, 2008, the ALJ issued a decision finding the claimant not disabled under the Social Security Act because the claimant's drug use was a contributing factor material to his disability. (R. 25). First, the ALJ concluded that the claimant had not engaged in substantial gainful activity since the amended onset date of disability of March 6, 2006. (R. 15). At step two, the ALJ determined that the claimant had the severe medically determinable impairment of "substance abuse disorder associated with the use of cocaine and crystal methamphetamine." (R.

---

[1] The contents of exhibit B13F were not included in the medical record available on this appeal.

16). However, the ALJ found that the claimant failed to present evidence of a disorder of the lumbar spine; therefore, the disorder was not a severe medical impairment. The ALJ also concluded that the claimant failed to present evidence of MMR or adjustment disorder. (R. 20).

Regarding the claimant's spine disorder, the ALJ considered the medical evidence of Dr. Aldaher. The claimant's range of motion was intact, and he did not complain of pain radiation to his lower extremities. Dr. Aldaher noted that the claimaint displayed no paresthesias (tingling), no numbness, or no muscle weakness. The claimant further denied any recent back trauma. (R. 17). Dr. Aldaher further found that the claimant did not limp or use an assistive device. The claimant stated that he only took Tylenol and Advil to relieve the pain. From his findings, Dr. Aldaher opined that the claimant could perform work-related activities. *Id.* Based on Dr. Aldaher's evidence, the ALJ concluded that the spine disorder was nothing more than back pain, and the claimant failed to show that the impairment was severe. (R.19).

Regarding the claimant's mental allegations, the ALJ first considered the findings of Dr. Arnold, a consultative psychologist who performed an evaluation on May 5, 2006, at the request of DDS. Dr. Arnold conducted an IQ test in which the claimant scored a full scale IQ of 70. Dr. Arnold also diagnosed the claimant with adjustment disorder, alcohol abuse–partial remission, substance abuse–self reported remission, MMR, and a history of special education services. Then, the ALJ considered the findings of Dr. Rankart, the non-examining state agency psychological consultant. Based on the review of Dr. Arnold's findings, Dr. Rankart opined that the diagnosis of MMR had little longitudinal support and the more appropriate diagnosis was BIF. Dr. Rankart further noted that even if the claimant fell within the range of MMR, none of his other impairments met the standard for the second prong of the test. (R. 17-18).

The ALJ concluded that the findings of Dr. Arnold were not credible based on the claimant's testimony of drug use until February 2007 and the claimant's admittance to drug rehabilitation in May 2007. In making the decision that the findings were incredible, the ALJ assumed that had Dr. Arnold known of the claimant's drug use during the evaluation, "such knowledge would likely have affected her opinion regarding Claimant's performance on the IQ test." (R. 20). The ALJ also noted that Dr. Rankart was unaware of the claimant's drug use when he made his evaluation.

The ALJ then considered the notes from Mr. Grayson's sessions from May 10, 2007, to February 4, 2008. Throughout the course of the visits, Mr. Grayson noted the claimant's drug use; his desire for food stamps and disability; and a few instances of unkemptness. On the Februaury 4 visit, Mr. Grayson noted that the claimant complained that the ALJ denied him disability, and he complained of delusional thinking, paranoia, and auditory and visual hallucinations. Mr. Grayson opined that the claimant suffered from borderline functioning/marginally unstable. (R.19).

Based on the objective medical evidence, the ALJ found that the adjustment disorder was not a severe medically determinable impairment. The ALJ stated that the findings of Dr. Arnold, on which the claimant primarily relied, were incredible because they were based on the claimant's self-report of substance abuse remission. The ALJ further stated that CMHC never diagnosed the claimant with adjustment disorder. The ALJ noted that the claimant did not meet the duration requirement for the determination of disability. (R.19).

Likewise, the ALJ found that the MMR was not a severe medically determinable impairment. The ALJ noted that an IQ score of 70 is representative of a "range of 65-75, and an

IQ score of 71 through 84 represents a diagnosis of BIF, not MMR." (R.20). The ALJ further stated that Dr. Arnold noted that the claimant's scores were in the borderline range, and Dr. Rankart opined that BIF was the more appropriate diagnosis. The ALJ placed the greatest emphasis on the fact that CMHC diagnosed the claimant with BIF in February 2008. The ALJ concluded that because the claimant failed to present evidence of adjustment disorder or MMR, the special technique to determine severity was not needed. (R. 20).

At step three, the ALJ found that none of the claimant's impairments taken individually or collectively met any of the impairments defined in the List of Impairments. The ALJ reasoned that even if the claimant met his burden of proof for the first prong, which is an IQ of 60-70, he failed to show an additional impairment that would significantly limit his ability to work. (R. 21). The ALJ further found at step four that the claimant's substance abuse renders his residual functional capacity as unable to do substantial work-related activity. Based on the claimant's age, education, and past relevant work, the ALJ found that the claimant's substance abuse disorder renders him unable to transition to other work available in significant numbers in the economy. (R. 22).

After finding the claimant disabled because of substance abuse disorder, the ALJ determined whether the substance abuse was a contributing factor to the determination of disability. The ALJ concluded that the claimant would have no severe impairments if his drug abuse were removed. He further found the claimant's testimony about his drug abuse to be incredible because of the inconsistencies in his testimony. The ALJ noted that in March 2006, the claimant stated that he stopped using drugs in 1997; in May 2006, he stated that he stopped using five years earlier; and on May 16, 2007, he stated that he used drugs until February 2007. Finally,

at the hearing, the claimant testified that he last used drugs in May 2007. Based on the claimant's failure to establish a severe impairment if the drug use were removed and given the inconsistencies in the claimant's testimony, the ALJ concluded that the claimant's substance abuse was a contributing factor to his disability determination. Therefore, the ALJ found the claimant not disabled.

## VI.  DISCUSSION[2]

**A.     The ALJ applied improper legal standards when concluding that the claimant did not present sufficient evidence to show a "severe" impairment.**

The claimant argues that the ALJ erred as a matter of law in finding that the claimant failed to present evidence of a severe impairment. "The claimant bears the burden of proving that he has a severe impairment or combination of impairments." *Jones*, 190 F.3d at 1228. An impairment is not severe only if the abnormality is so slight and its effects so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. *Edwards*, 736 F. 2d at 630. However, the severity step is viewed as a "threshold inquiry" only, and the claimant's burden of proof is mild. *McDaniel*, 800 F.2d at 1031.

"In evaluating mental impairments, the ALJ must use the 'special technique,' which requires separate evaluations on a four-point scale of how the claimants's mental impairment impacts: (1) daily living activities; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation." *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005).

---

[2]The court notes that its decision is based on an incomplete record. The records from August 20, 2007, and February, 4, 2008, specifically, were not reviewed by this court. However, the absence of these documents has no effect on the court's decision.

"The ALJ is required to incorporate the results of this technique into his findings and conclusions or a remand is required." *Id.* at 1214.

The ALJ concluded that the claimant failed to present evidence of MMR or adjustment disorder and thus, the claimant had no severe impairments that warranted disability. Regarding the MMR, the ALJ acknowledged that the claimant scored a full scale IQ of 70, which is within the range of 60-70 required by § 12.05(C) to qualify as a mental disability. Moreover, the ALJ stated that significantly subaverage intellectual functioning is defined as an IQ of 70 or below. Yet, citing the Diagnostic and Statistical Manual of Mental Disorders-IV-TR, the ALJ noted that an IQ of 70 represents a score of 65-75 because of a measurement error of 5 points. He stated that an IQ of 71-84 evidenced BIF, but he failed to state the description for the range that included an actual score of 70. Also, the ALJ assumed that had Dr. Arnold known of the claimant's drug use, her findings would have a different result. If the claimant used drugs in 2007, he may have been using at the time of the IQ test; however, the ALJ failed to present any actual evidence demonstrating that the substance abuse had an effect on the psychological evaluation.

As to the diagnosis of adjustment disorder, the ALJ again reasoned that Dr. Arnold's unawareness of the claimant's substance abuse had an effect on her diagnosis. The ALJ further noted that CMHC, the claimant's primary mental health facility, never diagnosed the disorder. However, the burden of proof for severity is mild, and the ALJ incorrectly disregarded Dr. Arnold's finding simply because of the substance abuse and because CMHC did not find that particular diagnosis.

Also, the ALJ declined to apply the special technique as required. The ALJ justified his decision by stating that the claimant failed to present evidence of MMR or adjustment disorder.

However, the claimant did present evidence of MMR and adjustment disorder. As discussed above, the ALJ cannot disregard that evidence because of his assumption that the claimant's substance abuse altered the test results in some way.

Once substance abuse is determined to be a factor in a claimant's record, the ALJ has to determine whether the substance abuse is a contributing factor to the claimant's disability. "The claimant bears the burden of proving that the substance abuse is not a contributing factor material to the disability determination pursuant to 42 U.S.C. § 423(d)(2)(C) or §1382c(a)(3)(J)." *Doughty v. Apfel*, 245 F.3d at 1281. If the evidence shows that despite the substance abuse, the claimant's remaining limitations are disabling, then the substance abuse is not material. However, if the remaining limitations are not disabling, then the substance abuse is material and thus, the substance abuse is a contributing factor. 20 C.F.R. §§ 416.935(b)(2)(i) and (ii). The ALJ found that the claimant's MMR and adjustment disorder were not severe upon removal of the substance abuse. He gave no reasoning other than referring to his findings in step two of the sequential evaluation when substance abuse was taken into account. However, the reasoning in his first severity step analysis included his assumption that the substance abuse altered the IQ test results. Therefore, the ALJ did not offer any real reasoning as to why the claimant would not be disabled despite his substance abuse.

The court will not speculate as to the effects of the substance abuse on Dr. Arnold's findings, and the ALJ erred in doing so. Accordingly, the court reverses the Commissioner's decision and remands for psychological evaluation and IQ testing performed with the knowledge of the claimant's substance abuse and proceedings in accordance with those findings.

**B.     The ALJ applied improper legal standards when concluding that the claimant failed**

**to present evidence of presumptive mental retardation that meets the Listing.**

The claimant also argues that the ALJ erred in not finding presumptive disability pursuant to § 12.05(C). "To be considered for disability benefits regarding mental impairment, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Crayton*, 120 F.3d at 1219; 20 C.F.R. § 404.12.05. Specifically, "under § 12.05 (C), a claimant must establish: a valid verbal, performance, or full scale IQ score of 60-70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. § 404.12.05(C); *Davis*, 985 F.2d at 531. When a claimant presents evidence indicating a deficit in adaptive functioning after age 22, the ALJ must presume mental impairment before age 22 because mental retardation generally does not improve as a person ages. *Hodges*, 276 F.3d at 1268.

The court declines to discuss the issue of presumptive disability because the issue of severity is meritorious. However, the court notes that the ALJ again erroneously based his reasoning regarding presumptive disability on the assumption that the claimant's substance abuse altered the psychological evaluation.

## VII.  CONCLUSION

For the reasons above, the court finds that the ALJ failed to apply the proper legal standards when determining if the claimant's alleged impairments constituted severe impairments as outlined in step two of the sequential process. Accordingly, substantial evidence does not support his decision. Thus, the court REVERSES the Commissioner's decision and REMANDS for psychological evaluating and IQ testing of the claimant with the knowledge of

the claimant's substance abuse. Subsequently, the ALJ is to reconsider entitlement of benefits in light of the reevaluation. The court will enter a separate order to that effect simultaneously.

DONE and ORDERED this 12th day of August 2010.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE